UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Misael Ramos,

        Plaintiff

v.

Steven Thompson, et al.,

        Defendants

Case No. 2:24-cv-02128-CDS-NJK

**Order Granting Defendants' Motion to Dismiss**

[ECF No. 4]

    Plaintiff Misael Ramos brings this action against Las Vegas Metro Police Department (LVMPD) and officers Steven Thompson and Caroline Beck[1] for injuries related to an arrest. *See* Compl., ECF No. 1-1. After removing this action, the defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that discretionary-act immunity and qualified immunity apply, Ramos inadequately established duty, and punitive damages is not a standalone claim. *See* Mot., ECF No. 4.[2] Because the defendants are entitled to discretionary-act and qualified immunity, I grant their motion. However, Ramos is granted leave to amend his complaint as set out below.

**I.     Background**[3]

    In his complaint, Ramos alleges that on October 8, 2022, Officers Thompson and Beck responded to a domestic disturbance in his hotel room. ECF No. 1-1 at ¶¶ 11–13. The officers "conducted an investigation into the facts and circumstances which led to the call for domestic disturbance" and arrested Ramos, placing him in handcuffs. *Id.* at ¶¶ 14–15. During the arrest, Ramos stated that he was "feeling lightheaded" and could not maintain his balance and was

---

[1] Officer Beck is referred to as "C. Beck" in the complaint, *see* ECF No. 1-1, but defendants acknowledge that the "C." stands for Caroline, *see* ECF No. 4 at 1.
[2] This motion is fully briefed. *See* Opp'n, ECF No. 15; Reply, ECF No. 18.
[3] Unless otherwise noted, the court only cites to Ramos's original complaint (ECF No. 1-1) to provide context to this action, not to indicate a finding of fact.

"swaying and stumbling." *Id.* at ¶¶ 16–17. The officers placed Ramos in a chair and then left Ramos unsupervised "to continue their investigation." *Id.* at ¶¶ 18–19. Ramos fell off the chair and hit his head on the floor, requiring that he be taken to the hospital. *Id.* at ¶¶ 20–21.

Ramos filed this case against officers Thompson and Beck, as well as LVMPD, claiming (1) negligence against the officers for the on-scene conduct and against LVMPD for failure to adequately train and supervise its officers; (2) infringement on his Fourth and Fourteenth Amendment rights in violation of 42 United States Code § 1983; and (3) punitive damages. *Id.* at ¶¶ 25–56.

## II.  Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a

court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

### III. Discussion

#### A. Negligence claim

Defendants first argue that Ramos's negligence claims are barred by discretionary-act immunity. Nev. Rev. Stat. (NRS) § 41.032(2) states that a plaintiff cannot maintain an action based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused." Discretionary-act immunity applies when (1) the conduct involves individual judgment or choice and (2) that judgment is based on considerations of social, economic, or political policy. *Martinez v. Maruszczak*, 168 P.3d 720, 727–29 (Nev. 2007).

##### 1. *Individual officers*

Defendants first argue that the officers are protected by discretionary-act immunity because whether to arrest a person, and how to conduct that arrest, are discretionary decisions for police officers. ECF No. 4 at 3–5 (citing *Napouk v. Las Vegas Metro. Police Dep't*, 669 F. Supp. 3d 1031, 1047 (D. Nev. 2023) ("Whether to detain or arrest a suspect and how to do so are discretionary functions of the police department.") and *Newton v. Las Vegas Metro. Police Dep't*, 2014 U.S. Dist. LEXIS 61851, at *19 (D. Nev. May 5, 2014)). In response, Ramos argues that the defendants mischaracterize his negligence claim, which is not based on the officers' decision to arrest him but on their failure to provide appropriate care and supervision "after he was already in custody and experiencing a medical emergency." ECF No. 15 at 5. He states that once he was in custody, the officers had a ministerial duty to execute basic safety protocols, especially once

they were aware of his medical condition. *Id.* (citing *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1065 (Nev. 2007)). He also states that there was no active crime scene to secure or threat to officer safety that required the officers to make policy-based decisions about crime scene management. *Id.* at 6–7. In their reply, the defendants assert that *Butler* is inapposite because it did not deal with a situation where the at-issue actions occurred during an ongoing investigation, and on-scene decisions are policy-decisions within the contours of NRS 41.032(2).

      Nevada law sets out that acts by officers can be either ministerial or discretionary—the latter of which entitles the officers to immunity. *See Pittman v. Lower Ct. Counseling*, 871 P.2d 953, 956 (Nev. 1994), *overruled on other grounds by Nunez v. City of N. Las Vegas*, 1 P.3d 959 (Nev. 2000). "A ministerial act is an act performed by an individual in a prescribed legal manner in accordance with the law, without regard to, or the exercise of, the judgment of the individual." *Id.* (citing *Trout v. Bennett*, 830 P.2d 81, 87 (Mont. 1992)). As mentioned, an act is discretionary if (1) the conduct involves individual judgment or choice and (2) that judgment is based on considerations of social, economic, or political policy. *Martinez*, 168 P.3d at 727–29. However, "certain acts, although discretionary, do not fall within the ambit of discretionary-act immunity because they involve negligence unrelated to any plausible policy objectives." *Butler*, 168 P.3d at 1066 (internal quotation marks omitted). "[C]ourts must assess cases on their facts, keeping in mind the purposes of the exception: to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 1066–67 (internal quotation marks omitted). "Thus, if the injury-producing conduct is an integral part of governmental policy-making or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the legislative or executive branch's power or responsibility would be usurped, immunity will likely attach under the second criterion." *Martinez*, 168 P.3d at 729.

      Police officers "exercise[ ] discretion and [are] thus generally immune from suit where the act at issue required 'personal deliberation, decision, and judgment,' rather than 'obedience

to orders, or the performance of a duty in which the officer is left no choice of his own.'" *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007) (quoting *Maturi v. Las Vegas Metro. Police Dep't*, 871 P.2d 932 (1994)). Officers' decisions "as to how to accomplish a particular seizure or search [are] generally considered . . . discretionary determination[s] under Nevada law, and officers are therefore immune from suit as to state law claims arising therefrom in most cases." *Id.*

I find that Ramos's claims against the individual defendants are barred by discretionary-act immunity because according to Ramos's complaint, the officers were still conducting discretionary functions by investigating the reported crime when Ramos was injured. Ramos states in his complaint that the officers "left [him] . . . **to continue their investigation**." ECF No. 1-1 at ¶ 19 (emphasis added). Thus, sitting Ramos down in the chair was a discretionary policy decision of the officers as they worked to resolve the domestic dispute they were called to manage. As alleged, the officers did respond to Ramos's medical needs, providing him a chair after he stated he was unbalanced and swayed and stumbled on his feet. *See id.* at ¶¶ 16–18. All of this was a policy decision as the investigation was ongoing. In *Butler*, the Supreme Court of Nevada held that prison officials have a duty of reasonable care toward incarcerated inmates to protect from known threats of attack by other inmates and "a duty to exercise reasonable care to avoid foreseeable harm to [a released inmate] in effectuating his post-release placement." *See Butler*, 168 P.3d at 1063–65. This is distinctly different than Ramos's interpretation of the case, which he states as: "once the immediate law enforcement objectives have been achieved, subsequent duties to protect those in custody are ministerial rather than discretionary." ECF No. 15 at 7. The circumstances of arrest—especially during an ongoing investigation—and release from prison could not be more different. With a prison release, the prison officials have significant time and latitude to consider whether an inmate is being released to a known dangerous environment, and to consider alternative courses of action. By contrast, at the time of arrest with an ongoing investigation, even if there is no more immediate threat of physical harm, the officers are still making policy decisions about how best to secure witness statements and

5

manage the scene. The purpose of the discretionary act exception is to prevent the judiciary from second guessing the in-the-moment decisions of officers, and that is clearly applicable here. Therefore, I find that discretionary-act immunity applies to the officers and Ramos's negligence claim against them is dismissed. Because I do not find that amendment would be futile, I dismiss the claim without prejudice.

### 2. LVMPD

Defendants next argue that Ramos's negligent training and supervision claim against LVMPD is barred by discretionary-act immunity under *Paulos*, which held that this legal theory is barred as to "LVMPD's implementation of policies, training, and supervision of officers as to the use of force, detention methods, and 'securing of medical treatment for injured/ill' detainees." ECF No. 4 at 5 (quoting *Paulos v. FCH1, LLC*, 456 P.3d 589, 596 (Nev. 2020)). Ramos does not address this issue in his response.[4] "The failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion." LR 7-2(d). "LR 7-2(d) applies when a party fails to address a portion of the moving party's motion." *La Mojarra Loca, Inc. v. Wells Fargo Merch. Servs. LLC*, 2019 WL 6499108, at *2 (D. Nev. Dec. 3, 2019) (citing *Moore v. Ditech Fin., LLC*, 2017 WL 2464437, at *2 (D. Nev. June 7, 2017), *aff'd*, 710 F. App'x 312 (9th Cir. 2018)). Thus, I grant defendants' motion as to LVMPD without prejudice.[5]

### B. 42 U.S.C § 1983 claim

Defendants next argue that Ramos's § 1983 claim against the officers is barred by qualified immunity and that he does not sufficiently state a claim against LVMPD. ECF No. 4 at 8–12.

---

[4] Ramos has a subsection discussing discretionary-act immunity as to the individual defendants (*see* ECF No. 15 at 5–7 (labeled with a "1.")) but there is no subsequent subsection addressing the defendants' argument about the failure to train and/or supervise.

[5] Because I dismiss Ramos's claims based on the defendants' discretionary-act immunity theory, I do not address the defendants' "regulatory or statutory duty" or "duty of care" theories.

### 1. *Qualified immunity*

"In § 1983 actions, qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Clearly established" means that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful. *See District of Columbia v. Wesby*, 583 U.S. 48, 62 (2018); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018). Relevant case law "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). The court may evaluate the qualified immunity prongs in any order. *Felarca v. Birgeneau*, 891 F.3d 809, 815–16 (9th Cir. 2018).

Further, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality," *City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015) (quotation marks omitted), because such immunity "is effectively lost if a case is erroneously permitted to go to trial." *Pearson*, 555 U.S. at 231. In other words, "immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). In the Ninth Circuit, if a defendant affirmatively raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that both prongs are met. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017).

Defendants argue that "Plaintiff's allegations are that officers listened to his reports of lightheadedness and took responsive action by sitting him in a chair as they continued their investigation[,]" which does not demonstrate that the officers ignored him in distress and has no precedent in law. ECF No. 4 at 10. In response, Ramos argues that the constitutional violation stemmed from the infringement on his Fourteenth Amendment right to adequate medical care while in custody. ECF No. 15 at 11 (citing *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) and *City of*

*Revere v. Mass. Gen. Hosp.*, 463 U.S. 239 (1983)). He states that his stumbling and lightheadedness presented an obvious risk of falling, and the officers failed to take proper precautions by placing him in the chair with his hands cuffed behind his back. *Id.* He argues next that the right was clearly established by the many cases stating that it is a constitutional violation to be deliberately indifferent to an inmate's medical needs and it is considered deliberate indifference when an officer is aware of, but disregards, a substantial risk of serious harm. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) and *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)). He asserts that the "constitutional violation stems not from allowing him to sit, but from failing to summon medical help, leaving him unattended and handcuffed despite knowing he was experiencing symptoms that created an obvious risk of falling." *Id.* at 12. In their reply, the defendants argue that Ramos's case law is far too generic, and his claims that he was experiencing a "serious" medical need are not reflected in his complaint. ECF No. 18 at 6–7.

First, I note that the defendants' conception of qualified immunity, especially at the dismissal stage, is far too narrow. They state that Ramos

> did not come forward with any case—from any jurisdiction, let alone a consensus of authorities or binding authority as required to get past qualified immunity—where a court held that officers violate the Fourth Amendment despite providing a chair to a detainee who complains of "lightheadedness" and was swaying while standing in handcuffs but did not ask for medical treatment at that moment.

ECF No. 18 at 6. If the requirements to bypass qualified immunity were so exacting, then there would, in effect, be no exception to qualified immunity whatsoever. Under such a reading, if there were a case with the exact same fact pattern except the complainant instead complained of "grogginess" instead of lightheadedness or was placed onto a stool instead of a chair, their claim would be barred by qualified immunity. As explained, relevant case law "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 580 U.S. at 79 (cleaned up).

Nonetheless, I find that the officers are entitled to qualified immunity here because Ramos has not come forward with sufficient allegations to demonstrate that the officers' actions amounted to a constitutional violation. Although he was injured, his placement in the chair, or the failure to provide him more substantial medical attention, was not constitutionally inadequate. Him feeling lightheaded and allegedly swaying is not a serious medical issue as Ramos continues to insist. *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"); *Madlock v. Shannon*, 2021 U.S. Dist. LEXIS 48530 (W.D. Wis. Mar. 15, 2021) ("[A] single incident of vomiting and feeling "a little light headed" . . . does not rise to the level of a constitutional harm (citing *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (holding that "minor" physical injuries are insufficient to support violation under the Eighth Amendment)); *Killens v. Sheffield*, 2020 U.S. Dist. LEXIS 136693 (S.D. Ga. June 30, 2020) (holding that plaintiff failed to state a claim of medical indifference where he felt lightheaded and dizzy and was denied any assistance). As previously discussed, the officers were continuing to investigate the scene after his arrest; Ramos was not bleeding out, experiencing chronic and/or substantial pain, experiencing something that would affect his daily activities, and the officers did not place him in a dangerous position. In fact, the officers took steps to better protect his safety, placing him into a chair. I can find no interpretation of these actions—placing a lightheaded person into a chair and turning attention elsewhere—to be in violation of Ramos's Fourteenth Amendment rights. Thus, the officers are entitled to qualified immunity, and the defendants' motion is granted as to the officers.

### 2. Plausibility of Ramos's § 1983 claim against LVMPD

For a plaintiff to maintain a § 1983 claim against a municipality, there must be a violation of a plaintiff's constitutional rights. *See Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("While

the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights. Here, the municipal defendants cannot be held liable because no constitutional violation occurred."). Because I find that there was no violation of Ramos's constitutional rights, I grant the defendants' motion as to LVMPD.[6]

### C. Punitive damages

Defendants argue that punitive damages cannot be a standalone claim (citing *Agha-Khan v. Wells Fargo Bank, NA*, 2017 WL 3749578, at *2 (D. Nev. Aug. 30, 2017), *aff'd sub nom. Agha-Khan v. Wells Fargo Fin. Nat'l Bank*, 2019 WL 1379590 (9th Cir. Mar. 1, 2019) ("A few . . . claims fail because they are not proper causes of action: . . . punitive damages are not stand-alone claims, but forms of relief . . . .")), and that punitive damages are not permitted against LVMPD or its officers anyway (citing *Beckwith v. Pool*, 2013 WL 3049070, at *7 (D. Nev. June 17, 2013) ("NRS 41.035(1) states that an award for a tort against a municipality or one of its officer [sic] 'may not include any amount as exemplary or punitive damages.' Plaintiffs may not recover any punitive damages against the city defendants for any liability on any of the state law claims."). ECF No. 4 at 12–13.

Because Ramos concedes that the punitive damages claim should not have been a standalone claim for relief but instead a request for relief, and because I dismiss all of Ramos's claims, I dismiss his punitive damages claim. However, I do so without prejudice.

### D. Ramos's proposed first amended complaint

Ramos requests leave to amend his complaint if it is dismissed, and attaches his proposed first amended complaint to his response. ECF No. 15 at 16–17; Proposed first am. compl., ECF No. 15-1. In their reply, the defendants argue that the court should reject the proposed first amended complaint because it improperly seeks to add four new claims and point to additional facts that they allege demonstrate that it should be dismissed, too. ECF No. 18 at 10–12.

---

[6] I do not address Ramos's various arguments on this issue because they are ultimately premised on the same claim that there was a constitutional violation. There was not.

Ramos need not have attached the proposed first amended complaint; Federal Rule of Civil Procedure 15(a) has a "policy favoring liberal amendment." *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). Because I grant defendants' motion without prejudice, Ramos is granted the opportunity to file a first amended complaint.

### IV.  Conclusion

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **[ECF No. 4] is GRANTED without prejudice.** Ramos is granted leave to amend his complaint. He has until September 3, 2025, to file an amended complaint, which must be titled "First Amended Complaint."

Dated: August 20, 2025

_____
Cristina D. Silva
United States District Judge