UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Misael Ramos,

     Plaintiff

v.

Steven Thompson, et al.,

     Defendants

Case No. 2:24-cv-02128-CDS-NJK

**Order Granting the Defendants'
Motion to Dismiss and Denying the
Plaintiff's Motion for Leave to file Surreply**

[ECF Nos. 31, 39]

  Plaintiff Misael Ramos brings this action against Las Vegas Metropolitan Police Department (LVMPD) and officers Steven Thompson and Caroline Beck for injuries related to an arrest. *See* Sec. am. compl., ECF No. 30. The court previously granted the defendants' motion to dismiss, but allowed Ramos leave to amend his complaint. Order, ECF No. 20. The defendants now move to dismiss Ramos's second amended complaint (SAC). Mot. to dismiss, ECF No. 31. This motion is fully briefed.[1] Ramos seeks leave to file a surreply. Mot. for leave, ECF No. 39. This motion is also fully briefed.[2] Because the defendants are entitled to discretionary act and qualified immunity, I grant their motion to dismiss. I also deny Ramos's motion for leave.

**I. Background**[3]

  As alleged in the SAC, on October 8, 2022, Officer Thompson and Officer Beck arrived and responded to a domestic disturbance call at the Signature at MGM Grand. ECF No. 30 at 2–3. Officer Thompson interviewed Ramos in the hallway while Officer Beck interviewed Ramos's girlfriend inside the hotel room. *Id.* at 3. During the interview, Ramos "described injuries he had sustained, including a bloody nose." *Id.*[4] Officer Thompson asked Ramos if he needed medical attention, and Ramos responded affirmatively. *Id.*

---

[1] Opp'n to mot. to dismiss, ECF No. 34; Reply to mot. to dismiss, ECF No. 38.
[2] Opp'n to mot. for leave, ECF No. 40; Reply to mot. for leave, ECF Nos. 41, 42.
[3] I incorporate by reference the factual background in previous order, ECF No. 20 at 1–2.
[4] I note for the record that the SAC does not provide any additional allegations nor information as to what other injuries Ramos had sustained at this point.

Officer Beck's and Thompson's sergeant arrived and assisted in the investigation, and the officers decided to arrest Ramos and his girlfriend. *Id.* at 4. EMTs arrived at the scene and evaluated Ramos's previously reported injuries.[5] *Id.* During this time, Ramos declined to be transported to the hospital, so the EMTs departed. *Id.* Then, Officer Beck handcuffed Ramos with his hands behind his back facing the wall and placed him on a chair. *Id.*

As alleged, during this time, Ramos requested to use the restroom, so Officer Beck helped Ramos get out of the chair and escorted him around the corner to an area in front of the hotel room door. *Id.* While Officer Beck and Thompson tried to keep the hotel room open, Ramos "suddenly developed acute onset of severe lightheadedness and dizziness." *Id.* Ramos immediately reported the symptoms to the officers, stating "he felt lightheaded and could not maintain his balance." *Id.* at 5.[6] Officer Beck directed the hotel security to bring over the chair that Ramos had been sitting in earlier. *Id.* While security was bringing the chair, Officer Beck stayed next to Ramos, holding him by his right arm to help him maintain his balance. *Id.*

Officer Beck then assisted Ramos in sitting in the chair angled toward the wall. *Id.* at 5. After Ramos was seated, Officer Thompson and Officer Beck returned to the hotel room to handcuff Ramos's girlfriend, and the hotel security officers supervised Ramos as he was seated. *Id.* Ramos alleges that while Officers Thompson and Beck were in the hotel room with Ramos's girlfriend, his "neurological symptoms progressed to syncope" and he lost consciousness and fell from the chair. *Id.* at 7. Ramos's head struck the hard tile floor which resulted in him suffering a traumatic brain injury and a loss of consciousness. *Id.*

After Ramos fell, Officer Thompson ran to assist, and medical personnel were called to assist. *Id.* at 7. Officer Thompson remained with Ramos until medical personnel arrived. *Id.* As a result of this event, Ramos filed a SAC and brings four claims: 42 U.S.C. § 1983 claims against the

---

[5] It remains unclear what injuries were reported, outside of a bloody nose.

[6] Absent from the SAC is any indication that Ramos told the officers that he wanted the EMTs to return. Nor does the SAC allege that Ramos told the officers that he felt like he was going to faint. In other words, there was no other information provided to the officers regarding additional symptoms he may have been feeling at the time.

officers in their individual capacity and municipal liability against LVMPD, a negligence claim against the individual officers, and a negligent training and supervision claim against LVMPD. *See generally id.*

## II.     Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

III.     Discussion

     A.  **Ramos's motion for leave to file a surreply (ECF No. 39) is denied.**

A surreply is an additional reply brief filed by the non-moving party after the underlying motion has already been fully briefed. *Hammler v. Lyons*, 2023 WL 113764, at *1 (E.D. Cal. Jan. 5, 2023) (citations omitted). The Federal Rules of Civil Procedure do not expressly permit the filing of a surreply. However, Local Rule 7-2(b) specifically permits the filing of a motion, a response, and a reply. LR 7-2(b). That same rule explicitly states that "[s]urreplies are *not* permitted without leave of court; motions for leave to file a surreply are discouraged." *Id.* (emphasis added). Because surreplies are discouraged, "[o]nly the most exceptional or extraordinary circumstances warrant permitting a surreply to be filed." *Stevens v. Prentice*, 2018 WL 3758577, at *1 (D. Nev. Aug. 8, 2018) (citation omitted).

Where the moving party presents new matters for the first time in a reply brief, the court may either refuse to consider the new matters or allow the opposing party an opportunity to respond. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003)) ("[t]he district court need not consider arguments raised for the first time in a reply brief"); *see also Avery v. Barsky*, 2013 WL 1663612, at *2–3 (D. Nev. Apr. 17, 2013) (explaining that the non-moving party may only file a surreply to address new matters raised in a reply brief); *ACLU v. City of Las Vegas*, 13 F. Supp. 2d 1064, 1071 (D. Nev. 1998) (explaining courts must not consider new evidence filed in a reply brief without giving the non-moving party an opportunity to respond).

Ramos argues that he seeks to file a surreply because the defendants' reply contains material mischaracterizations of the SAC's allegations and fails to address controlling legal authority that warrant a brief response. ECF No. 39. To support his motion for leave, Ramos cites a singular case—that is, *El Pollo Loco, Inc. v. Hashim. Id.* (citing 316 F.3d 1032, 1040–41 (9th Cir. 2003)). Ramos asserts that surreplies are appropriate when a reply raises new arguments or mischaracterizes the record. *Id.* Ramos further argues that (1) the defendants' reply

mischaracterizes the temporal sequence of events and relies on inapposite case law to create a medical reliance defense; (2) the defendants argue for the first time that Ramos's loss of consciousness was unexpected and the officers did not affirmatively cause his injuries under NRS 41.0336; (3) the defendants' reply fails to address the plaintiff's argument that elevating a person with neurological symptoms is medically counter-indicated; (4) the defendants' reply fails to engage with and acknowledge controlling objective reasonableness standard for pretrial detainees; and (5) the plaintiff seeks to correct his citation to *Rico v. Ducart* and directs this court to *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). ECF No. 39 at 2–3.

In opposition, the defendants argue that the motion should be denied because this circumstance does not rise to the exceptional or extraordinary level warranting surreply. ECF No. 40 at 2. The defendants further argue that Ramos's motion is an attempt to get the last word on arguments concerning their motion to dismiss. *Id.*

I deny Ramos's motion for two reasons. First, upon review of the case cited by Ramos, *El Pollo Loco, Inc. v. Hashim*, it is unclear how the case and pincite provided by Ramos support his position that surreplies are appropriate when there is a mischaracterization of the record. *See* LR 7-2(d) (explaining the "failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion."). Thus, because Ramos provides no points and authorities, I deny granting Ramos's motion on his argument that the defendants' reply contains material mischaracterizations of the SAC's allegations.

Second, while surreplies may indeed be appropriate when there is a new argument raised for the first time on reply, the defendants did not raise any new arguments in their reply. Ramos argues that the defendants raised a new argument—that the plaintiff's loss of consciousness was unexpected and officers did not affirmatively cause injuries. However, in reading the motion to dismiss, the defendants raised this argument. *See* ECF No. 31 at 7.[7]

---

[7] To the extent that there are new arguments raised in the reply, I find that that the appropriate remedy is not to consider new arguments raised, rather than granting Ramos's motion to file a surreply. However, that is not the case here.

Lastly, Ramos has provided no support on how his third, fourth, and fifth grounds for moving to file a surreply amount to exceptional or extraordinary circumstances, and a review of those arguments are neither exceptional nor extraordinary warranting the filing of a surreply. Accordingly, I deny Ramos's motion for leave to file a surreply.

### B. The defendants' motion to dismiss (ECF No. 31) is granted.

The defendants argue that Ramos's SAC still fails to assert a viable claim for two reasons. ECF No. 31 at 2. First, the defendants argue that the statutory defenses under NRS 41.032 and NRS 41.0336 bar Ramos's negligence-based claims. *Id.* Second, the defendants argue that Ramos's § 1983 claims fail because the officers did not violate a clearly established duty of care imposed by the Constitution and because Ramos's conclusory allegations are not enough to support a viable § 1983 claim against LVMPD itself. In opposition, Ramos asserts that the SAC alleges that both suspects were detained in a purely custodial situation, and police officers witnessed Ramos develop acute neurological symptoms and failed to provide "adequate supervision and medical care to the pretrial detainee" as required by the Constitution. ECF No. 34 at 6. I first address the defendants' negligence arguments.

### 1. *Negligence claim*

Nevada Revised Statute (NRS) § 41.032(2) states that a plaintiff cannot maintain an action based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused." Discretionary-act immunity applies when (1) the conduct involves individual judgment or choice and (2) that judgment is based on considerations of social, economic, or political policy. *Martinez v. Maruszczak*, 168 P.3d 720, 727–29 (Nev. 2007).

### a. *Third claim: individual officers*[8]

The defendants first argue that Ramos's third cause of action is barred under NRS 41.032 because the at-issue actions concerned discretionary conduct based on public policy concerns. ECF No. 31 at 3. Specifically, they argue that discretionary-act immunity bars Ramos's negligence claim because the officers' decision to detain Ramos and "how to do so when also controlling and arresting his girlfriend for suspected domestic battery" are discretionary acts. *Id.* at 4. In opposition, Ramos asserts that the SAC is challenging the defendants' failure to fulfill their constitutional obligation to provide medical care to a pretrial detainee in a purely custodial situation. ECF No. 34 at 11–12. In essence, Ramos argues that the decision whether to summon medical assistance for a pretrial detainee who cannot stand without physical support is not a discretionary policy determination susceptible to a policy analysis, rather it is a constitutional duty. *Id.* at 12.

To support his position, Ramos asserts that the court must accept as true the following statements:

- The decision to arrest both Ramos and his girlfriend "concluded the investigation." ECF No. 34 at 10 (quoting ECF No. 30 at ¶ 24)[9];

- "Officers Thompson's and Beck's discretionary functions as to the investigation concluded." *Id.* (quoting ECF No. 30 at ¶ 26); and

- At the time of the medical emergency, "all investigative work was complete, no tactical decisions remained, and no policy judgments about crime scene management were required." *Id.* (quoting ECF No. 30 at ¶ 44).

The defendants argue that the factual allegations contradict Ramos's conclusions and support dismissal. ECF No. 38 at 3. I address discretionary immunity first.

---

[8] Because I dismiss Ramos's claims based on the defendants' discretionary-act immunity theory under NRS 41.032, I do not address the defendants' arguments raised pursuant to NRS 41.0336.

[9] As highlighted by the court previously, Ramos's prior complaint asserted that the investigation was ongoing. ECF No. 20 at 5 (citing 1-1 at ¶ 19). While the SAC controls, Ramos's new conclusory position that the investigation had concluded is dubious.

7

Nevada law sets out that acts by officers can be either ministerial or discretionary—the latter of which entitles the officers to immunity. *See Pittman v. Lower Ct. Counseling*, 871 P.2d 953, 956 (Nev. 1994), *overruled on other grounds by Nunez v. City of North Las Vegas*, 1 P.3d 959 (Nev. 2000). "A ministerial act is an act performed by an individual in a prescribed legal manner in accordance with the law, without regard to, or the exercise of, the judgment of the individual." *Id.* (citing *Trout v. Bennett*, 830 P.2d 81, 87 (Mont. 1992)). An act is discretionary if (1) the conduct involves individual judgment or choice and (2) that judgment is based on considerations of social, economic, or political policy. *Martinez*, 168 P.3d at 727–29.

Police officers "exercise[ ] discretion and [are] thus generally immune from suit where the act at issue required 'personal deliberation, decision, and judgment,' rather than 'obedience to orders, or the performance of a duty in which the officer is left no choice of his own.'" *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007) (quoting *Maturi v. L.V. Metro. Police Dep't*, 871 P.2d 932 (1994)). Officers' decisions "as to how to accomplish a particular seizure or search [are] generally considered . . . discretionary determination[s] under Nevada law, and officers are therefore immune from suit as to state law claims arising therefrom in most cases." *Id.*

Although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Here, Ramos's "support" and purported factual allegations are precisely the sort of legal conclusions *Twombly* prohibits. Ramos alleges that when he developed his symptoms, "the scene had transitioned from an active law enforcement investigation requiring discretionary decision-making to a purely custodial situation requiring only compliance with established constitutional duties." ECF No. 34 at 9; ECF No. 30 at 5, ¶ 44. But Ramos provides no case law to support that this court should just accept his conclusion that the investigation was over and that the officers' actions were non-discretionary, and are indeed contradictory as argued by the defendants.[10] For instance, Ramos

---

[10] As previously explained by the court, "[t]he purpose of the discretionary act exception is to prevent the judiciary from second guessing the in-the-moment decisions of officers." ECF No. 20 at 6.

asserts that he "was handcuffed and compliant in front of the hotel room and his girlfriend was detained and compliant in the bedroom of the hotel room far from Plaintiff. All investigative work was complete, no tactical decisions remained, and no policy judgments about crime scene management were required." ECF No. 30 at 6, ¶ 44. But a few paragraphs earlier, Ramos alleges that the officers briefly left Ramos to go "handcuff [p]laintiff's girlfriend," *id.* at 5, ¶ 41, giving an indication that the investigation and an arrest was still on-going. And the allegation that "[a]ll investigative work was complete, no tactical decisions remained" is not factual, but an unsupported legal conclusion.

The Supreme Court, the Ninth Circuit, and the Supreme Court of Nevada have clearly addressed this issue. Whether to detain or arrest a suspect and how to do so are discretionary functions of the police department. *See, e.g., Terry v. Ohio*, 392 U.S. 1 (1968); *Maturi*, 871 P.2d at 934. In *Alfrey v. United States*, the court held "in the absence of mandatory directives governing how to perform investigations, the discretionary-function exception bar[s] the plaintiffs' claims relating to the negligent conduct of the investigation. That holding applies to any criminal or quasi-criminal investigation." 276 F.3d 557, 565–66 (9th Cir. 2002) (citations modified).

Ultimately, only when officers act in bad faith or in disregard for a citizen's rights do they lose discretionary-function immunity. *See* NRS 41.032; *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1133 (9th Cir. 2017). The complaint lacks any allegations of bad faith or an outright disregard of Ramos's rights. Instead, the SAC summarily alleges Officer Beck effectuated a seizure by handcuffing Ramos and placing him in a chair. But an officer "with a particularized basis to believe that a situation may pose safety risks may handcuff or point a gun at an individual without converting an investigative detention into an arrest." *See United States. v. Guzman-Padilla*, 573 F.3d 865, 884 (9th Cir. 2009).

9

Because the only allegations provided by Ramos to support that there was no longer an ongoing investigation are legal conclusions couched as factual allegations,[11] I find that discretionary-act immunity bars Ramos's negligence claim against the individual officer. So Ramos's third claim is dismissed. Further, as Ramos was previously given leave to amend, it appears further amendment would be futile, so Ramos's third claim is dismissed with prejudice.

### b. Fourth claim: LVMPD

In his fourth claim, Ramos seeks to hold LVMPD liable for failing to train and supervise its officers as it pertains to providing adequate instruction on recognizing medical emergencies requiring immediate professional evaluation, failing to establish clear protocols mandating medical assistance when detainees report acute symptoms, and by failing to monitor officers' responses to detainee medical emergencies. ECF No. 30 at 14, ¶¶ 94–95.

The defendants seek to dismiss this claim based on discretionary-act immunity under NRS 41.032. ECF No. 31 at 5. In particular, the defendants argue that the Supreme Court of Nevada held that discretionary-act immunity bars a cause of action for negligent training and supervision. *Id.* at 6 (first citing *Paulos v. FCH1, LLC*, 456 P.3d 589, 596 (Nev. 2020); and then citing *Manriquez v. L.V. Metro. Police Dep't*, 2020 WL 557520, at *2 (D. Nev. Feb. 4, 2020)). In opposition, Ramos argues that the defendants' position overstates the holding in *Paulos* and ignores the SAC allegations. ECF No. 34 at 12. Ramos further argues that the allegation in the SAC is not that LVMPD made a policy judgment about how to balance competing interest, but rather that LVMPD failed to train officers on a non-discretionary constitutional duty. *Id.* at 13.

---

[11] For instance, Ramos asserts in the SAC that he "was handcuffed and compliant in front of the hotel room and his girlfriend was detained and compliant in the bedroom of the hotel room far from Plaintiff. All investigative work was complete, no tactical decisions remained, and no policy judgments about crime scene management were required." ECF No. 30 at 6, ¶ 44. But a few paragraphs before, Ramos alleges that the officers briefly left Ramos to go "handcuff [p]lainitiff's girlfriend," ECF No. 30 at 5, ¶ 41, giving an indication that an arrest was still being effectuated. Further, the statement, "[a]ll investigative work was complete, no tactical decisions remained" is not a factual allegation, but an unsupported legal conclusion.

In reply, the defendants argue that Ramos cannot support his claim by using generalized conclusory allegations that LVMPD breached a duty to properly and adequately train officers on providing medical care. ECF No. 38 at 7. The defendants cite *Scott v. Department of Commerce*, which held that NRS 41.032 shielded the state from civil liability with a negligence claim because a governmental body retains "considerable discretion in how exactly to administer the statute." ECF No. 38 at 7–9 (citing 763 P.2d 341 (Nev. 1988)).

"Claims for negligent training and supervision are based upon the premise that an employer should be liable when it places an employee, who it knows or should have known behaves wrongfully, in a position in which the employee can harm someone else." *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013). For negligent training and supervision, the plaintiff must prove "(1) a general duty on the employer to use reasonable care in the training, supervision, and retention of employees to ensure that they are fit for their positions, (2) breach, (3) injury, and (4) causation." *Sanchez v. Albertson's LLC*, 2022 U.S. Dist. LEXIS 134119, at *4 (D. Nev. July 27, 2022). Nevada recognizes that an "employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996).

The Supreme Court of Nevada has held that "because NRS 41.032(2) mirrors the Federal Tort Claims Act (FTCA), [they] turn to federal decisions to aid formulating a workable test for analyzing claims of immunity under NRS 41.032(2)." *Martinez*, 168 P.3d at 727. The Ninth Circuit has consistently held that "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000); *see Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008) ("Because Nevada looks to federal case law to determine the scope of discretionary immunity, and because federal case law consistently holds training and supervision are acts entitled to such immunity, LVMPD is entitled to discretionary immunity on this claim.").

11

Ramos alleges in his SAC that LVMPD knew or should have known that its inadequate training and supervision of its officers created an unreasonable risk of harm to detainees in custody. ECF No. 30 at 14, ¶ 96. But LVMPD's decision to implement certain training policies as it pertains to medical assistance in emergency situations when detaining a suspect are decisions that involve policy-type judgments. Therefore, I find that the negligent training and supervision claim is barred by § 41.032(2).[12] Consequently, Ramos's fourth cause of action asserting negligent training and supervision against LVMPD is dismissed with prejudice.

### 2.  42 U.S.C § 1983 claims

Ramos alleges that he had the following constitutional rights: the right to adequate medical care for serious medical needs while in custody; the right to be free from deliberate indifference to substantial risks of serious harm; the right to have officers summon medical help when experiencing acute medical symptoms; and the right to adequate supervision when physically restrained and medically compromised. ECF No. 30 at 8–9, ¶ 65. Incorporating these allegations, Ramos alleges that Officer Thompson and Officer Beck violated clearly established law by making an unqualified medical decision and ignoring his serious neurological symptoms and making unqualified medical determinations that these symptoms did not require professional assessment. *Id.* at ¶ 68.

Ramos also brings a § 1983 claim against LVMPD, alleging that its policies, customs, and deliberate indifference to training needs were the moving force behind the plaintiff's injuries caused by the violations of his constitutional rights. *Id.* at 10, ¶ 73. The defendants argue that qualified immunity bars Ramos's first and second § 1983 claims against the officers, and that Ramos's conclusory allegations do not support a viable claim against LVMPD. ECF No. 31 at 7. I agree.

---

[12] Even if I did not find that the claim is barred, Ramos does not sufficiently plead a cause of action for negligent training or supervision. Rather, his complaint is doused with conclusory statements couched as factual allegations. See ECF No. 30 at 13–15, ¶¶ 90–99.

### a. *First claim: § 1983 claim against the individual officers*

As explained in my prior order granting dismissal,

"In § 1983 actions, qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Clearly established" means that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful. *See District of Columbia v. Wesby*, 583 U.S. 48, 62 (2018); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018). Relevant case law "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). The court may evaluate the qualified immunity prongs in any order. *Felarca v. Birgeneau*, 891 F.3d 809, 815–16 (9th Cir. 2018).

Further, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality," *City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015) (quotation marks omitted), because such immunity "is effectively lost if a case is erroneously permitted to go to trial." *Pearson*, 555 U.S. at 231. In other words, "immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). In the Ninth Circuit, if a defendant affirmatively raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that both prongs are met. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017).

ECF No. 20 at 7. Like Ramos's initial complaint, the SAC alleges that Ramos had the right to be free from deliberate indifference to his safety and medical needs while in the defendants' custody (ECF No. 30 at 8–9, ¶ 65; ECF No. 1-1 at 6, ¶ 39).

Ramos asserts that he felt lightheaded and dizzy, and that "[t]hese acute neurological symptoms are indicative of multiple serious medical conditions, which require immediate medical attention." ECF No. 30 at 4–5, ¶¶ 34–35. But the SAC alleges that Ramos only communicated with the officers that he "felt lightheaded and could not maintain his balance." *Id.* at 36. Further, part of the assertions raised in the SAC is that the officers "abandoned direct supervision of a medically compromised detainee who could not protect himself from falling." *Id.* at 6–7, ¶ 49. However, Ramos's own SAC describes that the hotel room that the officers left to

go arrest Ramos's girlfriend in relation to where he was as "the corner to an area immediately in front of the hotel room door." *Id.* at 4. Such allegations do not indicate that Ramos was abandoned when he was left with hotel security officers. While the court recognizes the argument Ramos makes—that is, the security officers had no authority to physically assist—it still remains unclear how the officers' decision to place Ramos in a chair when he had only communicated lightheadedness and feeling unbalanced amounts to a constitutional violation.

As previously explained, the allegation that Ramos felt lightheaded and was swaying is not a serious medical issue.[13] *See* ECF No. 20 at 9 (citing *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" (quotation omitted)); *Madlock v. Shannon*, 2021 U.S. Dist. LEXIS 48530 (W.D. Wis. Mar. 15, 2021) ("[A] single incident of vomiting and feeling 'a little light headed' . . . does not rise to the level of a constitutional harm (citing *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (holding that "minor" physical injuries are insufficient to support violation under the Eighth Amendment)); *Killens v. Sheffield*, 2020 U.S. Dist. LEXIS 136693 (S.D. Ga. June 30, 2020) (holding that plaintiff failed to state a claim of medical indifference where he felt lightheaded and dizzy and was denied any assistance)).

---

[13] The SAC also alleges that his "symptoms were so severe that Officer Beck had to physically hold him by the arm to prevent him from falling, that Plaintiff literally could not remain upright without physical assistance." ECF No. 34 at 23–24 (citing ECF No. 30 at ¶¶ 37–38). Ramos argues that this is not a plaintiff who reported feeling dizzy, but rather a plaintiff who an officer observed could not stand without being held up. *Id.* at 24. But the SAC does not allege that Ramos had communicated or indicated that he needed medical assistance; rather, it alleges that Officer Beck remained next to him "holding him by his right arm to help him maintain his balance until the hotel security officer brought the chair to Plaintiff." ECF No. 30 at 5, ¶ 38. Moreover, the SAC is devoid of any allegations indicating that the officers continued to observe Ramos being unbalanced once he was seated nor are there any allegations indicating Ramos communicated feeling dizzy or lightheaded after being seated in a chair. So, even if the court accepts his allegations as true, it is unclear how the officers' decision to seat him amounted to a constitutional violation.

Having reviewed the SAC and the parties' arguments, I still find that the officers are entitled to qualified immunity because Ramos has not pled sufficient facts demonstrating that Officer Thompson's and Officer Beck's actions amounted to a constitutional violation. Accordingly, the officers are entitled to qualified immunity, and the defendants' motion is granted as to the individual officers.

### b. Second claim: § 1983 claim against LVMPD

The defendants argue that Ramos's second claim against LVMPD fails because no officer violated Ramos's constitutional rights. ECF No. 31 at 13. They argue that the fact that Ramos fell from the chair does not establish any act in violation of the Constitution. *Id.* In essence, they argue that because no officer violated Ramos's constitutional rights, Ramos cannot proceed with a § 1983 claim against LVMPD. The defendants next argue that Ramos's conclusory allegations are not enough to plausibly show unconstitutional policies or procedures because the SAC asserts "broad and vague references to 'similar incidents in the past.'" *Id.* (citing ECF No. 30 at 11).

In opposition, Ramos argues that he has adequately pleaded a municipal liability claim against LVMPD under *Monell.* ECF No. 34 at 24. To support his position, Ramos asserts that when the court accepts the allegations as true, "Officers Thompson and Beck's conduct demonstrates objectively deliberate indifference to Plaintiff's serious symptoms and medical needs." *Id.* Ramos further asserts that these actions took place during a purely custodial situation with no competing law enforcement demands. *Id.* at 25.[14]

For a plaintiff to maintain a § 1983 claim against a municipality, there must be a violation of a plaintiff's constitutional rights. *See Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("While the liability of municipalities doesn't turn on the liability of individual

---

[14] As already explained above, Ramos's assertion that when he was injured, it was a "purely custodial situation" is unpersuasive. His own allegations are that the officers were still effectuating his girlfriend's arrest. *See* ECF No. 30 at 5, ¶ 41 (explaining officer Thompson and Officer Beck left to handcuff plaintiff's girlfriend). Further, the SAC does not allege whether the officers were able to determine what or who caused the domestic disturbance at the time of executing Ramos's arrest. *See* ECF No. 30 at 3, ¶¶ 13–18.

officers, it is contingent on a violation of constitutional rights. Here, the municipal defendants cannot be held liable because no constitutional violation occurred."). Because I find Ramos fails to sufficiently allege a constitutional violation, I grant the defendants' motion to dismiss Ramos's second § 1983 claim.

**IV.    Conclusion**

IT IS HEREBY ORDERED that the defendants' motion to dismiss **[ECF No. 31] is GRANTED.**

IT IS FURTHER ORDERED that the plaintiff's motion for leave to file a **surreply [ECF No. 39] is DENIED.**

The Clerk of Court is kindly instructed to enter judgment accordingly, and close this case.

Dated: June 4, 2026

_____
Cristina D. Silva
United States District Judge

16